# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

LARRY DEMOND WILLIAMS,           ]
                                 ]
      Movant,                    ]
                                 ]
vs.                              ]           2:11-cv-8048-IPJ-JHE
                                 ]           2:08-cr-0048-IPJ-JHE
                                 ]
THE UNITED STATES OF AMERICA,    ]
                                 ]
      Respondent.                ]

## MEMORANDUM OPINION

This is a motion to vacate, set aside, or correct a sentence, brought by a federal prisoner, pursuant to 28 U.S.C. § 2255. The movant, Larry Demond Williams, was convicted in this court on November 20, 2008, of one count of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1)(Count 1) and one count of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1)(Count 2). He was sentenced on April 27, 2009, to a term of life imprisonment. The United States Court of Appeals for the Eleventh Circuit affirmed the convictions and sentences on February 3, 2010, in an unpublished opinion.

Williams filed the current § 2255 motion to vacate, set aside, or correct his sentence on December 8, 2011. In response to the court's orders to show cause, the respondent has filed a motion to dismiss in which it maintains that the motion to vacate is due to be dismissed because it is barred by the statute of limitations. By order of the court, the parties were advised that the respondent's answer would be treated as a motion for summary dismissal. The movant was advised that in responding to the motions for summary dismissal, he must supply the court with counter

affidavits and/or documents to set forth specific facts showing that there are genuine issues of material fact to be decided. In response, the movant has filed a traverse.

Effective April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") made several changes in the law relating to habeas corpus procedure. The AEDPA amended 28 U.S.C. § 2255 to read in part, as follows:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Williams' conviction became final on May 4, 2010, ninety days following the Eleventh Circuit's entry of judgment on February 3, 2010. *See Close v. United States,* 336 F.3d 1283, 1284-85 (11th Cir. 2003). Thus, the one-year limitations period began running on May 4, 2010, and expired one year later, on May 4, 2011. Williams did not file his § 2255 motion until December 8, 2011, seven months after the limitations period expired. Therefore, the motion to vacate is barred by the statute of limitations.

Williams argues that the statute of limitations should be equitably tolled.  As the Supreme Court has explained, the time period specified in 28 U.S.C. § 2244 is a statute of limitations, not a jurisdictional bar, and "§ 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010).

> The Supreme Court recently reaffirmed, however, that "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." [*Holland*, 130 S.Ct.] at 2562 (internal quotation marks omitted); *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam) (holding that equitable tolling is available "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence").  "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 130 S.Ct. at 2565 (internal quotation marks and citation omitted).  As for the "extraordinary circumstance" prong, like the Supreme Court's articulation in *Holland*, we too have required a defendant to show a causal connection between the alleged extraordinary circumstances and the late filing of the petition.  *See Lawrence v. Florida*, 421 F.3d 1221, 1226–27 (11th Cir. 2005).
>
> A court also may consider an untimely § 2254 petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a "fundamental miscarriage of justice" because it would require that an individual who is actually innocent remain imprisoned.  *See Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  The actual innocence exception is "exceedingly narrow in scope," and the petitioner must demonstrate that he is factually innocent rather than legally innocent.  *Id.*; *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). . . .
>
> The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner.  *Drew*, 297 F.3d at 1286.  Mere conclusory allegations are insufficient to raise the issue of equitable tolling.  *See id.* at 1292–93; *Pugh v. Smith*, 465 F.3d 1295, 1300–01 (11th Cir. 2006); *Helton v. Sec'y for the Dep't of Corr.*, 259 F.3d 1310, 1314 (11th Cir. 2001) (per curiam).

*San Martin v. McNeil*, 633 F.3d 1257, 1267-1268 (11th Cir. 2011). Because of this difficult burden, the Eleventh Circuit Court of Appeals has rejected most claims for equitable tolling. *See, e.g., Dodd v. United States*, 365 F.3d 1273 (11th Cir. 2004) (limitations period not equitably tolled during period when prisoner was transferred to another facility and did not have access to his papers)*; Diaz v. Secretary for Dept. of Corrections*, 362 F.3d 698 (11th Cir. 2004) (holding that lapse of 532 days, 258 days before filing first federal petition and 274 days before filing second federal petition, constitutes lack of due diligence); *Johnson v. United States*, 340 F.3d 1219 (11th Cir. 2003) (holding that petitioner's inaction during the year after his conviction was affirmed on direct appeal did not justify equitable tolling); *Helton v. Secr. for Dept. Of Corrections,* 259 F.3d 1310 (11th Cir. 2003) (rejecting petitioner's reliance upon counsel's mistaken calculation of limitations period because petitioner did not show due diligence in ascertaining the correct period); *Steed v. Head*, 219 F.3d 1298 (11th Cir. 2000) (holding that attorney's miscalculation of the limitations period or mistake could not be the basis for equitable tolling); *Akins v. United States*, 204 F.3d 1086 (11th Cir. 2000) (limitations period not equitably tolled based on prison lockdowns and misplacement of legal papers); *Sandvik v. United States*, 177 F.3d 1269 (11th Cir. 1999) (holding that attorney negligence will not warrant equitable tolling). See also *Salazar-Carvajal v. United States*, No. 8:06-CV-539-T-30-MAP, 2006 WL 1063688 (M. D. Fla. April 21, 2006)(petitioner's inability to speak or read English or fact that petitioner is unlearned in the law or unfamiliar with the one-year limitations period are not "extraordinary circumstances" that would justify equitable tolling of the limitations period).

Williams makes the following argument in support of his contention that the limitations period should be equitably tolled:

4

>Here, after Williams was sentenced, his family provided the resources to retain Attorney John C. Robbins and was thereafter advised by Mr. Robbins that the fee would cover the direct appeal; petitions for rehearing; petition for rehearing en banc; petition for writ of certiorari and if necessary, post-conviction proceedings. Counsel's deficient performance became evident when he, (i) acted in bad faith by never providing Williams a[n] oral or written notice of the date his direct appeal was denied by the Eleventh Circuit; (ii) were [sic] dishonest by not filing a timely 2255 as retained to do; and (iii) had a divided loyalty to his new clients that retained him who had not been tried, convicted or sentenced like Williams.  If not for counsel's deficient performance in his failure to communicate with Williams about the status of his legal affairs (as he was paid to do) during and after h[i]s direct appeal, Williams was prejudiced severely in not being able to submit a timely 28 U.S.C. § 2255 perhaps in his own behalf.

*Memorandum of Law in Support of Williams' Petition Pursuant to 28 U.S.C. § 2255*, Court Document 2 at page 10 of 29.  Williams adds that it "may be worth mentioning" that his current place of confinement is "a dangerous and problematic prison that has had murders; numerous institutional lock-downs (at least once a month); and unexplained delayed movement (or if any at all) to the a [sic] Law Library before and after the Eleventh Circuit affirmed [his] direct appeal." *Id.* at page 9 of 29.

The petitioner "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 130 S. Ct. at 2562.  Williams claims that his attorney is to blame for his motion being untimely because: he acted in bad faith by never informing Williams that his direct appeal had been denied; he was dishonest by not filing a § 2255 motion as he was retained to do; and he has a divided loyalty to his new clients who have not been tried or convicted and sentenced as Williams has been.  However, only

>serious attorney misconduct, including "acts of gross negligence [and] acts of outright willful deceit," [can] constitute "extraordinary circumstances" which would justify equitable tolling of a movant's § 2255 motion. *Downs v. McNeil*, 520 F.3d

1311, 1323 (11th Cir. 2008); *see also Holland v. Florida*, 560 U.S. ——, 130 S. Ct. 2549, 2564, 177 L. Ed. 2d 130 (2010) (holding that equitable tolling may be available in an "extraordinary" instance in which the conduct of a petitioner's attorney constitutes more than "garden variety" or "excusable neglect").

*Smith v. United States*, No. 10–11793, 2011 WL 1207647 at *1 (11th Cir. Apr. 1, 2011).

Williams argues that his attorney's failure to inform him that his direct appeal had been denied, his failure to file a § 2255 motion to vacate on his behalf, and his divided loyalties are "extraordinary circumstances" that warrant equitable tolling. However, it is apparent from *Holland* that the fact that these allegations, standing alone, do not amount to anything more than simple negligence:

> The record facts that we have set forth in Part I of this opinion suggest that this case may well be an "extraordinary" instance in which petitioner's attorney's conduct constituted far more than "garden variety" or "excusable neglect." To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired—two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

*Holland*, 130 S. Ct. at 2564.

In his unsworn "Reply and Opposition to United States' Motion to Dismiss," Williams states his conclusion that "consecutive telephone calls; and written letters should've prompt[ed] Attorney Robbins to at the very least put Williams on notice when his direct appeal was denied." Court Document 9 at page 2 of 4. In his affidavit, Williams states that he "called Attorney Robbins on

6

consecutive occasions throughout 2010-2011, however Mr. Robbins either never pressed 7 to accept [his] pre-paid phone calls or counsel's secretary pressed 7 and thereafter offered that Robbins wasn't in the office at that time." Court Document 3 at page 2 of 2. Williams has not provided the court with copies of his "written letters" to Mr. Robbins and he offers no hint as to the content of the "written letters." Nor does he indicate how many letters he wrote, when he wrote them, or if and when he mailed them to Mr. Robbins. Further, although he avers that he "called Attorney Robbins on consecutive occasions throughout 2010-2011," he makes no claim that he ever spoke to Mr. Robbins or left a message for him. There is nothing in the record to indicate that Williams ever asked Mr. Robbins, or anyone in his office, about the status of his appeal or a potential § 2255 motion to vacate. Williams' conclusory allegation that his repeated phone calls and letters to Mr. Robbins should have prompted him to advise Williams as to the status of his appeal is insufficient to raise the issue of equitable tolling. *San Martin v. McNeil*, 633 F.3d 1257 (11th Cir. 2011). Williams' claims that his attorney failed to advise him as to the outcome of his appeal, failed to file a § 2255 motion to vacate on his behalf, and that he had divided loyalties amount to no more than "garden variety" or "excusable neglect," and do not rise to the level of a extraordinary circumstances that would warrant equitable tolling. *Holland*, 130 S.Ct. at 2564.

Williams explains that despite his attorney's refusal to talk to [him] on the telephone or respond to his letters before or after the Eleventh Circuit's February 3, 2010 decision, [he] did not f[e]ll a need to panick [sic] like someone who hadn't retained their counsel." Williams' Affidavit, Court Document 9 at page 3 of 4. To the extent this can be construed as a claim that his reliance on counsel due to his unfamiliarity with the law amounts to an "extraordinary circumstance" that prevented him from filing a timely petition, that claim would also fail. Neither miscalculation of the

limitations period, nor ignorance of the law, constitutes an extraordinary circumstance that would justify equitably tolling of the statute of limitations. *See, e.g.*, *Miller v. Florida*, 307 Fed. Appx. 366 (11th Cir. 2009)(lack of education); *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (pro se status and ignorance of the law); *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000), *cert. denied*, 534 U.S. 863 (2001) (lack of legal knowledge or legal resources, even in a case involving a pro se inmate); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000), *cert. denied*, 531 U.S. 1194 (2001) (pro se status and ignorance of the law); *Steed v. Head*, 219 F.3d 1298 (11th Cir. 2000)(miscalculation of limitations period or mistake); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 1999), *cert. denied*, 531 U.S. 1035 (2000) (ignorance of the law and pro se status); *Smith v. McGinnis*, 208 F.3d 13, 17 (2nd Cir.), *cert. denied*, 531 U.S. 840 (2000) (pro se status throughout most of the period of limitation); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir.), *cert. denied*, 528 U.S. 1007 (1999) (unfamiliarity with the legal process during the applicable filing period).

Finally, to the extent that Williams could be found to claim that his incarceration in "a dangerous and problematic prison that has had murders; numerous institutional lock-downs (at least once a month); and unexplained delayed movement (or if any at all) to the a [sic] Law Library before and after the Eleventh Circuit affirmed [his] direct appeal" amount to an "extraordinary circumstance" that would warrant equitable tolling, that claim would also fail. "[I]nstitutional transfers, periods of confinement under more restrictive conditions than general population, and lack of ready access to legal paperwork and law libraries are not 'extraordinary circumstances'; they are usual incidents of prison life." *Neal v. McNeil*, No. 3:09cv23/MCR/EMT, 2010 WL 298294, at *8 (N.D. Fla. Jan. 15, 2010). *See also*, *Miller v. Florida*, 307 Fed. Appx. 366, 368 (11th Cir. 2009)("even restricted access to a law library, lock-downs, and solitary confinement do not qualify

as [extra]ordinary circumstances warranting equitable tolling"); *Paulcin v. McDonough*, 259 Fed. Appx. 211 (11th Cir. 2007)(transfer to county jail and denial of access to his legal papers and the law library did not constitute extraordinary circumstances); *Bell v. Secretary, Dept. of Corrections*, 248 Fed. Appx. 101, 104-105 (11th Cir. 2007)(inability to access prison law library was not extraordinary circumstance beyond his control that prevented him from timely filing his habeas petition despite his due diligence); *Sanchez v. United States*, 170 Fed. Appx. 643, 647 (11th Cir. 2006)(prison lockdown, which precluded access to the law library during the time in which he was preparing his motion, not an extraordinary circumstance given that inmate had nearly eleven months prior to lockdown to prepare petition); *Cutts v. Jones*, Civil Action No. 1:06cv256-MHT, 2009 WL 230091, at *7 (M.D. Ala. Jan. 30, 2009)("[N]either an alleged inadequate prison law library nor limited access thereto establishes extraordinary circumstances warranting equitable tolling of the limitation period.").

Williams has not alleged or presented evidence that his detention in "a dangerous and problematic prison that has had murders; numerous institutional lock-downs (at least once a month); and unexplained delayed movement (or if any at all) to the a [sic] Law Library" was extraordinary or anything other than routine. Moreover, there is nothing to indicate that the problems at the prison had anything to do with his failure to file a timely motion to vacate. Thus, the conditions at the prison do not amount to an extraordinary circumstance that would warrant tolling of the statute of limitations.

Furthermore, even assuming that Williams had established extraordinary circumstances, his equitable tolling claim would still fail because of lack of reasonable diligence. In addition to establishing that the impediments facing him were "extraordinary," which he has not done, Williams

must establish that he diligently pursued his rights as would be reasonable under the circumstances.

In *Holland*, the petitioner:

> not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins—the central impediment to the pursuit of his legal remedy—removed from his case. And, the very day that Holland discovered that his AEDPA clock had expired due to Collins' failings, Holland prepared his own habeas petition pro se and promptly filed it with the District Court.

*Holland*, 130 S.Ct. at 2565.

Although Williams claims to have made consecutive phone calls to Mr. Robbins throughout 2010-2011, there is nothing to indicate he ever actually spoke to Mr. Robbins or anyone in his office. Further, although Williams states that he wrote letters to Mr. Robbins, his claim is vague, containing no details as to the number of letters he sent or the contents of the letters. Instead, Williams admits that even though his attempts to contact Mr. Robbins were unsuccessful, he was not concerned since Mr. Robbins had not been appointed, but was retained. In fact, Williams was so unconcerned with the lapse in time since his conviction and his inability to contact his attorney, that he "peacefully" served his sentence until by chance, he was paired in a cell with an inmate who turned out to be a "jurisconsultant." Although it had not occurred to Williams previously to call the appeals court to check on the status of his appeal, he did so on October 6, 2011, pursuant to his cell-mate's advice. On October 6, 2011, Williams was told that the Eleventh Circuit Court of Appeals had denied his appeal on February 3, 2010. Williams' cell-mate assisted him in preparing his motion to vacate. However, Williams did not file the motion until December 8, 2011, more than two months after he learned that his appeal had been denied.

Despite his inability to contact his attorney to learn of the status of his appeal, Williams took no further action until his "jurisconsultant" cell-mate suggested that he do so. He made no attempt to have his family contact his attorney when he was unable to contact his attorney himself. He made no attempt to call the appeals court to inquire as to the status of his appeal until October 6, 2011, twenty-nine months after he was sentenced on April 27, 2009. Then, once he learned that his appeal had been denied, he waited over two months before filing his motion to vacate. Clearly, Williams' actions do not support a claim that he exercised "reasonable diligence."

Williams has offered nothing to establish that the untimeliness of his petition is the result of circumstances that were beyond his control or that he acted with reasonable diligence. Therefore, he is not entitled to have the limitations period equitably tolled. The limitations period expired on May 4, 2011. Williams did not file a petition for a writ of habeas corpus in this court until December 8, 2011. Therefore, his petition is untimely.

Accordingly, the motion to vacate is due to be DENIED and DISMISSED because it is barred by the statute of limitations. An appropriate order will be entered.

DONE this 21st day of August 2013.

*[signature: Inge Prytz Johnson]*

INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE